**Reversed and Remanded and Memorandum Opinion filed June 18, 2024.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-23-00157-CV

---

**K. R., Appellant**

**V.**

**E. M. O., Appellee**

---

**On Appeal from the 310th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2022-01970**

---

## MEMORANDUM OPINION

In this appeal from a final order denying K.R.'s (Mother's) petition for the termination of the parental rights of alleged father, E.M.O. (Father), with respect to his alleged daughter Z.S.R. (Zara),[1] who was five years old at the time of the final hearing, Mother's sole issue on appeal is that the trial court erred because its denial of her request for termination was not supported by legally or factually sufficient

---

[1] To protect the minor's identity, we have not used the actual names of the child, parents, or other family members. *See* Tex. R. App. P. 9.8.

evidence.[2] We conclude the trial court erred and remand the case to the trial court for proceedings limited to the rendition of a final order terminating E.M.O.'s parental rights as an alleged father. *See* Tex. R. App. P. 43.3(a).

## I.     BACKGROUND[3]

Mother gave birth to Zara in February 2017 when Mother was thirteen years old. Mother and Father were in a relationship at the time Mother became pregnant; however, Mother alleges that Father was 22 years old at the time.

In January 2022, Mother filed a petition seeking the termination of Father's parental rights. As grounds, Mother alleges that Father (1) executed an affidavit of voluntary relinquishment and (2) engaged in conduct that constitutes an offense

---

[2] Mother's description of her issues on appeal is internally inconsistent. However, we construe her appellate brief to raise a single overarching issue supported by several subarguments. *See* Tex. R. App. P. 38.9 (briefing rules construed liberally); *Perry v. Cohen*, 272 S.W.3d 585, 587 (Tex. 2008) ("Appellate briefs are to be construed reasonably, yet liberally, so that the right to appellate review is not lost by waiver."). However, her subarguments do not assign error on the part of the trial court:

> ISSUE 1: Did [Mother] establish as a matter of law that [Father] committed an aggravated sexual assault, resulting in her pregnancy with [Zara]? In the alternative, was the trial court's finding that [Mother] did not establish by clear and convincing evidence that [Father] sexually assaulted her contrary to the overwhelming weight of the evidence?

> ISSUE 2: Did [Mother] establish as a matter of law that termination of [Father's] parental rights is in [Zara's] best interest? In the alternative, was the trial court's finding that termination was not in [Zara's] best interest contrary to the overwhelming weight of the evidence?

> ISSUE 3: Was [Mother] required to formally establish [Father's] paternity before his parental rights could be terminated?

Mother focuses heavily in her brief on her argument that termination was appropriate because of Father's alleged sexual assault of Mother when she was a minor. However, Mother's appellate arguments are also expressed in her summary of the argument which clearly articulates that the final order of the trial court is contrary to the evidence.

[3] Father has not filed an appellee's brief; accordingly, we accept as true the facts stated in Mother's appellant's brief if those facts are supported by the appellate record because Father has not contradicted them. Tex. R. App. P. 38.1(g).

under Penal Code section 22.021. She further alleges that termination is in the best interest of Zara, who was five years old at the time of the final hearing in November 2022.[4] Father did not appear or answer, although he provided to Mother an affidavit voluntarily relinquishing his parental rights, of which the trial court took judicial notice.[5] The trial court appointed an amicus attorney to represent the interests of the child.

Mother testified at trial that Father has not seen Zara since Zara was two years old. Father has never provided regular financial support for Zara. Mother also testified to her concern that Father poses a threat to Zara's safety, because of his history with Mother and because of unusual behavior Zara displayed when Father was around. Mother also testified that Father has long been involved in criminal activity and used controlled substances.

The amicus attorney, although not called as a witness, also made a statement at trial. The amicus attorney believed that termination of Father's parental rights was in Zara's best interest because of Father's lack of interest in a relationship with her, his inability to support Zara, as well as Father's alleged criminal and gang history. The amicus attorney stated that Zara appears to be "happy and well taken care of by [Mother]."

After trial, the trial court signed an order denying Mother's petition to terminate Father's parental rights. Although the trial court acknowledged that Father signed a voluntarily relinquishment of his parental rights, the trial court concluded: (1) "Termination of Respondent's parental rights based on the Father's Affidavit for Voluntary Relinquishment of Parental Rights is not in the best

---

[4] We refer to the final hearing as the "trial."

[5] The Department of Family Protective Services was not involved in this case in the trial court and is similarly not involved in this appeal.

interest of the child" and (2) "No grounds for involuntary termination of the parent-child relationship recognized by the laws of this state were pled."

The trial court later filed additional findings of fact and conclusions of law stating: (1) "Termination of Respondent's parental rights based on Texas Family Code 161.007, was not in the best interest of the child" and (2) "Petitioner did not prove by clear and convincing evidence that Respondent has engaged in conduct that constitutes an offense under Section 22.021 of the Penal Code."

## II. ANALYSIS

### A. Standard of review

Suits to terminate parental rights can be filed by multiple parties, including a governmental entity—such as the Department of Family and Protective Services—and the child's other parent. *See* Tex. Fam. Code Ann. § 102.003(a)(1), (5), (6).

Involuntary termination of parental rights is a serious proceeding implicating fundamental constitutional rights. *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985). A parent's right to the "companionship, care, custody, and management" of his or her child is a constitutional interest "far more precious than any property right." *Santosky v. Kramer*, 455 U.S. 745, 758–59 (1982); *see In re M.S.*, 115 S.W.3d 534, 547 (Tex. 2003). Consequently, we strictly scrutinize termination proceedings and strictly construe the involuntary termination statutes in favor of the parent. *Holick*, 685 S.W.2d at 20.

When reviewing the legal sufficiency of the evidence in a termination case, the appellate court should look at all the evidence in the light most favorable to the trial court's finding "to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). To give appropriate deference to the fact-finder's

4

conclusions, we must assume that the fact-finder resolved disputed facts in favor of its finding if a reasonable fact-finder could do so. *Id*. We disregard all evidence that a reasonable fact-finder could have disbelieved or found to have been not credible, but we do not disregard undisputed facts. *Id*. If, after conducting a legal-sufficiency review, we determine that no reasonable fact-finder could have formed a firm belief or conviction that the matter that must be proven was true, then the evidence is legally insufficient, and we must reverse. *In re K.M.L.*, 443 S.W.3d 101, 113 (Tex. 2014) (citing *In re J.F.C.*, 96 S.W.3d at 266).

In a factual-sufficiency review, we must give due consideration to evidence that the fact-finder could reasonably have found to be clear and convincing. *In re J.F.C.*, 96 S.W.3d at 266. We must determine whether the evidence is such that a fact-finder could reasonably form a firm belief or conviction about the truth of the petitioner's allegations. *Id*. We must also consider whether disputed evidence is such that a reasonable fact-finder could not have resolved the disputed evidence in favor of its finding. *Id*. If, in light of the entire record, the disputed evidence that a reasonable fact-finder could not have credited in favor of the finding is so significant that a fact-finder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient. *Id*.

## B.    Alleged father

Mother's pleadings describe Father as an alleged father, not a presumed father or an adjudicated father. Mother's testimony at trial further establishes this characterization as (1) she was never married to Father, (2) Father did not live with Mother and Zara for the first two years of Zara's life, and (3) there has been no paternity testing establishing Father's paternity. *See* Tex. Fam. Code Ann. § 101.0015 ("'Alleged father' means a man who alleges himself to be, or is alleged to be, the genetic father or a possible genetic father of a child, but whose paternity

5

has not been determined."); *see also* Tex. Fam. Code Ann. § 160.204(1), (5) ("A man is presumed to be the father of a child if . . . he is married to the mother of the child and the child is born during the marriage" or "during the first two years of the child's life, he continuously resided in the household in which the child resided and he represented to others that the child was his own.").

The Family Code allows the rights of an alleged biological father to be terminated without confirmation of paternity. *See* Tex. Fam. Code Ann. § 161.002. Although generally subject to the same "procedural and substantive standards" as apply to the termination of parental rights, termination of the rights of an alleged father are governed by separate procedural rules. Tex. Fam. Code Ann. § 161.002(a). As relevant here, the rights of an alleged father may be terminated if "after being served with citation, he does not respond by timely filing an admission of paternity or a counterclaim for paternity under Chapter 160[.]" Tex. Fam. Code Ann. § 161.002(b)(1).[6]

## C.   Grounds

Although Father was never served, Mother's petition was accompanied by an affidavit for voluntary relinquishment of parental rights which contained the following waiver of service:

> I fully understand that a lawsuit will be promptly filed in a court of competent jurisdiction to terminate forever the parent-child relationship between me and the child named above. . . . Because I do

---

[6] If the child is over one year of age when the petition is filed, an alleged father's parental rights may be terminated if the alleged father "has not registered with the paternity registry under Chapter 160." Tex. Fam. Code Ann. § 161.002(b)(2); *see Interest of L.N.A.H.*, 665 S.W.3d 907, 911 (Tex. App.—Houston [14th Dist.] 2023, no pet.). "The termination of the rights of an alleged father . . . does not require personal service of citation or citation by publication . . . and there is no requirement to identify or locate an alleged father who has not registered with the paternity registry under Chapter 160." Tex. Fam. Code Ann. § 161.002(c-1). However, Mother offered no evidence or argument concerning the paternity registry.

not want to testify in person before the Court, I freely and voluntarily waive and give up my right to the issuance, service, and return of citation, notice, and all other process in any suit to terminate my parental rights or in any suit to terminate my parental rights joined with a suit to adopt.

*See* Tex. Fam. Code Ann. § 161.103(c)(1) (affidavit of voluntary relinquishment of parental rights "may contain . . . a waiver of process in a suit to terminate the parent-child relationship filed under this chapter or in a suit to terminate joined with a petition for adoption"); *see also* Tex. Fam. Code Ann. § 161.109(b) ("In a proceeding to terminate parental rights in which the alleged or probable father has not been personally served with citation or signed an affidavit of relinquishment or an affidavit of waiver of interest, the court may not terminate the parental rights of the alleged or probable father" unless certificate from vital statistics unit states that diligent search has been made of paternity registry).

Mother's live pleading identified Father as an alleged Father and sought termination of his rights because of his voluntary relinquishment and his conduct that resulted in Mother's pregnancy.[7] At trial, Mother asked the trial court to terminate Father's parental rights based on the grounds in her live pleadings, which were also discussed at trial in Mother's testimony. Father never signed an admission of paternity or a counterclaim for paternity. To the contrary, Father agreed to waive service of Mother's petition for termination and agreed to voluntarily relinquish any parental rights he might have as an alleged father.[8]

---

[7] Mother's live pleading does not limit her termination grounds to any specific statutory grounds.

[8] Father's affidavit was not admitted into evidence at trial. However, Mother testified that Father voluntarily relinquished his parental rights and the sworn voluntary relinquishment was filed in the court's records. The trial court took judicial notice of the relinquishment stating in its findings of fact that Father executed an "Affidavit for Voluntary Relinquishment of Parental Rights before the suit was filed" and that the relinquishment "complied with Texas Family Code 161.103."

Section 161.002(b), allowing for termination of the rights of an alleged father, does not have a requirement that termination be in the best interests of the child. Tex. Fam. Code Ann. § 161.002(b)(1). Therefore, Mother met her burden to terminate any parental rights Father had as an alleged father by producing and filing his affidavit relinquishing his parental rights and waiving service.[9, 10]

There was no disputed evidence at trial. The only evidence received at trial could only have supported a firm belief or conviction about the truth of the petitioner's allegations—that the termination of Father's rights was warranted, as an alleged biological father.[11] *See In re J.F.C.*, 96 S.W.3d at 266; Tex. Fam. Code Ann. § 161.002. Therefore, no evidence was adduced that supports the trial court's final order denying termination of Father's rights as an alleged father.

We sustain Mother's sole issue on appeal.

---

[9] We need not address Mother's grounds that Father's parental rights should be terminated pursuant to Family Code section 161.007 on the basis that Father sexually assaulted Mother when she was a minor. Further, we also note that section 161.007 applies only to the termination of the rights of a "parent," which is statutorily defined to include "a man presumed to be the father, a man legally determined to be the father, a man who has been adjudicated to be the father by a court of competent jurisdiction, a man who has acknowledged his paternity under applicable law, or an adoptive mother or father." *See* Tex. Fam. Code Ann. § 161.007. The definition of parent does not include an alleged father, who has not acknowledged his paternity. *See id.*

[10] A presumed father or a father who has acknowledged his paternity can relinquish his rights under section 161.001(b(1))(K), which provides grounds for termination so long as termination is in the best interest of the child. *See* Tex. Fam. Code Ann. § 161.001(b)(1)(K), (2), .103.

[11] Although the trial court signed findings of fact and conclusions of law, as well as additional findings of fact and conclusions of law, the trial court's conclusions conflict with its findings of fact because the trial court's findings of fact support the conclusion termination was warranted.

### III.  CONCLUSION

Having sustained Mother's appellate issue, we reverse the final order of the trial court. Because the evidence before the trial court could only have supported a firm belief or conviction that termination was warranted, we reverse the final order and remand the case to the trial court for proceedings limited to (1) the rendition of a final order terminating E.M.O.'s parental rights as an alleged father and (2) any ancillary proceedings and orders necessary to render that final order. *See* Tex. R. App. P. 43.3(a).

/s/    Charles A. Spain
       Justice

Panel consists of Justices Bourliot, Zimmerer, and Spain.